1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOHN MELENDEZ, et al.,                No.  1:20-cv-01393-DAD-BAK (SAB)

12                   Plaintiffs,

13           v.                            ORDER GRANTING MOTION TO DISMISS,
                                           IN PART
14   CDCR SECRETARY RALPH DIAZ, *as
     an individual and in his official capacity*, et   (Doc. No. 16)
15   al.,

16                   Defendants.

17

18           This matter is before the court on the motion to dismiss filed by defendant California

19   Department of Corrections and Rehabilitation ("CDCR") Secretary Ralph Diaz and defendant

20   Avenal State Prison ("ASP") Warden Rosemary Ndoh (collectively, "defendants"), on March 4,

21   2021.[1]  (Doc. No. 16.)  Pursuant to General Order No. 617 addressing the public health

22

23   _____

     [1]  The undersigned apologizes for the excessive delay in the issuance of this order.  This court's
24   overwhelming caseload has been well publicized and the long-standing lack of judicial resources
     in this district long-ago reached crisis proportion.  That situation has now been partially addressed
     by the U.S. Senate's confirmation of a district judge for one of this court's vacancies on
25   December 17, 2021.  Nonetheless, for over twenty-two months the undersigned was left presiding
     over approximately 1,300 civil cases and criminal matters involving 735 defendants.  That
26   situation resulted in the court not being able to issue orders in submitted civil matters within an
     acceptable period of time and continues even now as the undersigned works through the
27   predictable backlog.  This has been frustrating to the court, which fully realizes how incredibly
     frustrating it is to the parties and their counsel.
28
                                                1

1    emergency posed by the COVID-19 pandemic, defendants' motion was taken under submission

2    on the papers.  (Doc. No. 17.)  For the reasons explained below, the court will grant the pending

3    motion to dismiss, in part.

4                                              **BACKGROUND**

5            This civil rights action arises from an incident that allegedly occurred at the CDCR

6    facility ASP on the morning of September 29, 2018, in which approximately 18 inmates who

7    were purportedly affiliated with the Fresno Bulldogs gang were "viciously stabbed and beaten in

8    a coordinated attack" for nearly 20 minutes by approximately 180 inmates "wield[ing] bludgeons

9    (padlocks in socks), knives ('shivs'), and other makeshift weapons" who were affiliated with the

10   rival gangs known as the Mexican Mafia ("EME") and the Surenos.  (Doc. No. 15 at ¶¶ 1, 7, 27–

11   28 49.)  Plaintiffs are twelve current and former ASP inmates who were victims of this alleged

12   attack, having suffered severe, life-threatening injuries that required substantial hospitalizations

13   (e.g., punctured lungs; stab wounds to the stomach, back, sides, head, and neck; broken nose; a

14   sliced open face; and post-traumatic stress disorder).  (*Id.* at ¶¶ 11–23.)  For example, two

15   plaintiffs were stabbed over 10 times and at least 21 times, respectively, and had to be airlifted to

16   a local hospital for medical care following the melee because their lungs were punctured.  (*Id.* at

17   ¶¶ 12, 20.)

18           Plaintiffs bring this action against defendants Diaz and Ndoh in their individual and

19   official capacities as the then-CDCR Secretary and then-ASP Warden, respectively, because they

20   allegedly "had prior knowledge of the direct and credible threat to plaintiffs' safety" and were

21   deliberately indifferent to that risk of harm.  (*Id.* at ¶ 1.)[2]

22           In the operative first amended complaint ("FAC"), plaintiffs describe four sources of

23   information that they contend demonstrate defendants' knowledge of the imminent attack on

24   inmates affiliated with the Bulldogs by inmates affiliated with the identified rival gangs.  (*Id.* at

25   _____

26   [2]  Plaintiffs' original complaint named the California Department of Corrections and
     Rehabilitation and Avenal State Prison as defendants in this action.  (Doc. No. 1.)  Because
27   plaintiffs' first amended complaint no longer names the California Department of Corrections and
     Rehabilitation and Avenal State Prison as defendants, the court will dismiss them from this action
28   and direct the Clerk of the Court to update the docket accordingly.

¶¶ 29–32.)  First, plaintiffs believe that "M.A.G.E.C. (the Multi-Unit Gang Enforcement Consortium) had communicated to defendants that a 'green light' (an authorization for unprovoked attacks) had been issued by the Mexican Mafia and the Surenos," and "[t]he Mexican Mafia and Surenos are known violent [strategic threat groups ("STGs")] who are known by defendants to be aggressive and violent."  (*Id.* at ¶ 28–29.)  Plaintiffs allege that "defendants were made aware of this information," which "demonstrates that defendants had knowledge that plaintiffs were at risk of serious physical violence."  (*Id.* at ¶ 29.)

Second, plaintiffs refer to internal CDCR documents of unspecified dates, alleging that "[p]er CDCR investigation documents (authored by J. Franco [Security Squad Officer #2]), the defendants had notice that EME and the Surenos were 'at war' with plaintiffs' group."  (*Id.* at ¶ 30) (brackets in original).  Those CDCR investigation documents allegedly "'reveal[ed] that there is a high probability of violence' between the groups," and that "[t]he information was especially credible as it was sourced from a note found on an 'affiliated' Bulldog inmate who was the victim of an 'attempted murder' by 'a suspected Sureno inmate.'"  (*Id.*)  Without alleging if, how, or when defendants were made aware of those CDCR documents, plaintiffs nonetheless allege that these documents "demonstrate[] that there was a particular and credible threat against the plaintiffs that was known by the defendants in advance of the attack."  (*Id.*)

Third, plaintiffs believe that in the days immediately preceding September 29, 2018, "a significant and substantial violent incident" occurred at the CDCR facility in Corcoran, California (less than 50 miles from ASP), in which inmates affiliated with the Mexican Mafia and the Surenos attacked several inmates affiliated with the Bulldogs.  (*Id.* at ¶ 31.)  Without alleging if, how, or when defendants were made aware of the Corcoran incident, plaintiffs nonetheless allege that "[t]his incident further substantiated defendants' actual knowledge that plaintiffs were at risk from a particular and credible threat—which manifested on September 29, 2018."  (*Id.*)

Fourth, plaintiffs allege that they heard several statements by ASP guards and staff "that they had been made aware that an attack on plaintiffs was imminent."  (*Id.* at ¶ 32.)  For example, on the morning of September 29, 2018, when plaintiffs asked CDCR employees why the first meal of the day was being served late, "they were told words to the effect of 'something's going

3

down.'" (*Id.* at ¶ 43.)  Further, plaintiffs allege on information and belief that "a sergeant identified as 'KD' stated to at least one of the plaintiffs that the prison was aware of the threat presented by the rival gangs and that the Corcoran incident was mentioned as proof that the [ASP] staff was aware of the risk of harm." (*Id.* at ¶ 44.)  Plaintiffs believe that "the guards' statements were based on information provided to them by defendants." (*Id.* at ¶ 32.)

Plaintiffs allege that defendants were aware that an attack on plaintiffs was imminent, and their actions and omissions demonstrate that they were deliberately indifferent to that risk of harm to plaintiffs' safety. (*Id.* at ¶¶ 7–9, 45–51.)  Plaintiffs allege that defendants failed to take "reasonable, common-sense measures to ensure plaintiffs' safety," including employing strategies that had been employed in the past to deter similar prisoner violence. (*Id.* at ¶ 7.)  In particular, plaintiffs allege that defendants:  (i) failed to place "an armed guard perched in a central location of the cell block" (called a "gunner") in the housing units "E" and "F" blocks where plaintiffs were mixed with a considerably larger number of Mexican Mafia and Surenos members (*id.* at ¶¶ 46, 68); (ii) failed to segregate the prisoners by group, electing instead to require plaintiffs to stay in the same area with their attackers and under only minimal guard supervision (*id.* at ¶¶ 7, 47, 68); and (iii) failed to allocate a sufficient number of guards to "E" and "F" blocks to prevent the attack and/or quell the attack as soon as it commenced, electing instead to allocate less than two guards per block (*id.* at ¶¶ 45, 68).  Plaintiffs believe that rather than come to plaintiffs' aid, "at least one of the guards fled the scene at the beginning of the attack" and "two guards hid and locked themselves in the 'rotunda' section of the blocks," "thus allowing the attack to continue for at least ten minutes longer than would have occurred had they intervened." (*Id.* at ¶¶ 50–51.) Further, plaintiffs allege that "[b]ecause the defendants failed to properly protect plaintiffs, CDCR guards were initially unable to penetrate the crowd attacking the plaintiffs and as a result plaintiffs were injured more seriously than they would have been had the number of guards been adequate to protect them." (*Id.* at ¶ 52.)

In addition, plaintiffs allege that when they returned to ASP following their hospitalizations, they met with (unspecified) CDCR employees who told them that they should dis-associate from the Bulldogs gang via a new prison program, but plaintiffs declined the offer.

(*Id.* at ¶¶ 55–56.)  According to plaintiffs, those CDCR employees did not indicate that declining the offer to participate in the new program would impact plaintiffs' other programming opportunities, yet "[a]s a direct result of plaintiffs' declination of the offer, plaintiffs have been denied the opportunity to 'program' (participate in rehabilitation programs designed to both prepare them for re-entry into society and shorten their sentences)," and "they have repeatedly been put in administrative segregation for no other reason than their declination of the offer."  (*Id.* at ¶¶ 57–58.)  Plaintiffs allege that they "were denied the opportunity to 'program' based solely on their affiliation [with the Bulldogs] while other groups—including the [Mexican Mafia and Surenos] groups that engaged in the coordinated attack against Plaintiffs—were given continued access to said programs."  (*Id.* at ¶ 80.)

Based on these allegations, plaintiffs assert the following four causes of action against defendants and DOES 1–15 (employees of CDCR and/or ASP) in their FAC:  (1) a 42 U.S.C. § 1983 claim of deliberate indifference to inmate safety in violation of the Eighth Amendment to the U.S. Constitution; (2) a 42 U.S.C. § 1985(3) claim of conspiracy to deprive plaintiffs of equal protection under the law in violation of the Fourteenth Amendment to the U.S. Constitution; (3) a 42 U.S.C. § 1986 claim of neglect to prevent interference with plaintiffs' equal protection rights; and (4) a state law negligence claim.  (Doc. No. 15 at 16–20.)  Plaintiffs seek the award of damages.  (*Id.*)

On March 4, 2021, defendants Diaz and Ndoh filed a motion to dismiss plaintiffs' FAC.  (Doc. Nos. 16, 16-1.)  On April 6, 2021, plaintiffs filed an opposition to the pending motion to dismiss, and on April 9, 2021, defendants filed their reply thereto.  (Doc. Nos. 19, 20.)

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A dismissal may be warranted where there is "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

1  Though Rule 8(a) does not require detailed factual allegations, a plaintiff is required to allege

2  "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

3  550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual

4  content that allows the court to draw the reasonable inference that the defendant is liable for the

5  misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

6      In determining whether a complaint states a claim on which relief may be granted, the

7  court accepts as true the allegations in the complaint and construes the allegations in the light

8  most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v.*

9  *United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  However, the court need not assume the truth

10  of legal conclusions cast in the form of factual allegations.  *U.S. ex rel. Chunie v. Ringrose*, 788

11  F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations,

12  "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*,

13  556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a

14  formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also*

15  *Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by

16  mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to assume that the

17  plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws

18  in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State*

19  *Council of Carpenters*, 459 U.S. 519, 526 (1983).

20                                   **ANALYSIS**

21      In the pending motion, defendants argue that all of plaintiff's claims against them should

22  be dismissed because the Eleventh Amendment of the U.S. Constitution bars suit against them in

23  their official capacities and because plaintiff's FAC fails to state a cognizable claim against them

24  in their individual capacities.  (Doc. No. 16-1 at 4–9.)

25  **A.      Plaintiffs' Claims Against Defendants in their Official Capacities**

26      In their opposition to the pending motion, plaintiffs do not meaningfully respond to

27  defendants' Eleventh Amendment immunity argument with regard to their three federal claims,

28  apparently conceding that their federal claims against defendants in their official capacities

6

1  should be dismissed.  Indeed, the law is clear that prison officials cannot be sued in their official

2  capacity for money damages based on alleged violations of federal law.  *See Dittman v.*

3  *California*, 191 F.3d 1020, 1025–26 (9th Cir. 1999) ("The State of California has not waived its

4  Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court.");

5  *Pena v. Gardner*, 976 F.2d 469, 472–73 (9th Cir. 1992) (noting that damages claim against state

6  prison officials sued in their official capacity was clearly barred by the Eleventh Amendment)

7  (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).  Accordingly, the court will grant defendants'

8  motion to dismiss plaintiffs' federal claims brought against them in their official capacities,

9  without leave to amend.  *See King v. Valenzuela*, No. 2:15-cv-2788-CAS-JPR, 2015 WL

10  13344901, at *3 (C.D. Cal. July 7, 2015) (dismissing plaintiff's § 1983 claims against defendants

11  in their official capacity "without leave to amend because they are barred by the 11th

12  Amendment"); *Perez v. Diaz*, No. 5:20-cv-02508-MCS-SHK, 2021 WL 6496781, at *14 (C.D.

13  Cal. Nov. 29, 2021) (concluding that the Eleventh Amendment bars plaintiff's damages claim

14  against "defendant Diaz in his official capacity as the Secretary of the CDCR").

15          Plaintiffs do, however, argue that the Eleventh Amendment does not bar their state law

16  negligence claim against defendants in their official capacities because the allegations in their

17  FAC refer to the California Tort Claims Act ("CTCA"), California Government Code § 815.2,

18  which provides tort liability for California public entities.  (Doc. No. 19 at 16.)  Plaintiffs'

19  argument in this regard fails, however, because "the Ninth Circuit [has] expressly held that the

20  CTCA does not waive a state or state agency's Eleventh Amendment immunity from being sued

21  in *federal* court." *Hoa v. Cate*, No. 12-cv-2078-EMC, 2012 WL 3939544, at *2–3 (N.D. Cal.

22  Sept. 10, 2012) (emphasis added) (citing *Riggle v. California*, 577 F.2d 579, 585 (9th Cir. 1978)

23  ("The California Tort Claims Act does not appear to contain a waiver of immunity which extends

24  further than the California state courts.")).  Accordingly, defendants' motion to dismiss plaintiffs'

25  state law negligence claim against defendants in their official capacities will also be granted,

26  without leave to amend.  *See Muniz v. Pfeiffer*, No. 1:19-cv-0233-LJO-JLT, 2019 WL 4596649,

27  at *15 (E.D. Cal. Sept. 23, 2019) (dismissing plaintiffs' negligence claim against CDCR

28  Secretary Diaz without leave to amend "[b]ecause it is determined as a matter of law that this

1    claim for money damages may not proceed against Secretary Diaz in his official capacity").

2    Thus, all of plaintiffs' claims brought against defendants in their official capacities will be

3    dismissed, without leave to amend.

4    **B.    Plaintiffs' Claims Against Defendants in their Individual Capacities**

5    Defendants also move to dismiss all of plaintiffs' claims brought against them in their

6    individual capacities, arguing that plaintiffs have failed to allege facts sufficient to satisfy certain

7    essential elements of those claims.  (Doc. No. 16-1 at 5–9.)

8    1.    Plaintiffs' State Law Negligence Claim

9    Defendants argue that plaintiffs' state law negligence claim should be dismissed because

10   plaintiffs have not alleged compliance with CTCA's claim presentation requirements.  (*Id.* at 10.)

11   In their opposition to the pending motion, plaintiffs erroneously contend that they need not allege

12   compliance with those requirements.  (Doc. No. 19 at 13–14.)  Alternatively, plaintiffs represent

13   they can and will allege compliance, with supporting documentation, if the court grants them

14   leave to file a second amended complaint.

15   To state their negligence claim, plaintiffs must allege "facts demonstrating or excusing

16   compliance with the claim presentation requirement."  *State of California v. Superior Ct.* (*Bodde*),

17   32 Cal. 4th 1234, 1239 (2004); *see also Hogan v. Robinson*, No. 1:03-cv-6408-AWI-LJO, 2005

18   WL 8176401, at *4 (E.D. Cal. Jan. 31, 2005) ("Allegations of compliance with the California

19   Tort Claims Act are necessary in order to properly plead a state law cause of action against a

20   public entity, as explained by the California Supreme Court in *Bodde*.").  Because plaintiffs have

21   not alleged compliance with the CTCA's claim presentation requirements in their FAC, plaintiffs'

22   negligence claim against defendants in their individual capacities will be dismissed, with leave to

23   amend.  *See Karim-Panahi v. L. A. Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988) (concluding

24   that the district court properly dismissed state law tort claims where the complaint failed "to

25   allege compliance with California tort claim procedures").

26   2.    Plaintiffs' § 1983 Deliberate Indifference Claim (Eighth Amendment)

27   The Eighth Amendment's proscription against cruel and unusual punishment includes a

28   requirement that prison officials "take reasonable measures to guarantee the safety of . . .

8

inmates." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984).  "This duty requires officials to protect prisoners from violence at the hands of other prisoners."  *Gilbert v. Fernald*, No. 2:20-cv-1269-SVW-KS, 2020 WL 6484789, at *8 (C.D. Cal. Oct. 16, 2020) (citing *Farmer v. Brennan,* 511 U.S. 825, 833 (1994)).  An Eighth Amendment claim based on deliberate indifference to prisoner safety has two elements.  First, a prisoner must allege and show that he was "incarcerated under conditions posing a substantial risk of serious harm."  *Farmer,* 511 U.S. at 834.  Second, the prisoner must allege and show that defendants acted with "deliberate indifference" to that risk.  *Id.*  Deliberate indifference is shown by proof that a prison official was "both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the prison official drew the inference.  *Id*. at 837.  The deliberate indifference standard "does not require that the guard or official believe to a moral certainty that one [prisoner] intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault."  *Berg v. Kincheloe,* 794 F.2d 457, 459 (9th Cir. 1986).  Nor is a prisoner claiming deliberate indifference to his safety required to "show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  *Id.*

Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways.  *Farmer*, 511 U.S. at 842.  A factfinder may infer a prison official's subjective awareness of a substantial risk to prisoner safety from circumstantial evidence, including "from the very fact that the risk was obvious."  *Id.*; *Wilk v. Neven*, 956 F.3d 1143, 1147 (9th Cir. 2020).  As the Supreme Court explained by way of example in *Farmer*,

> if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

511 U.S. at 842–43.

In addition, "[l]iability under § 1983 must be based on the personal involvement of the defendant," and a "plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see also Hernandez v. Cate*, 918 F. Supp. 2d 987, 1017 (C.D. Cal. 2013) (granting a motion to dismiss filed by the defendant Secretary of CDCR where "the complaint contains no specific, non-conclusory facts showing [his] personal involvement or participation in subjecting plaintiff to the modified programs that allegedly violated his Eighth and Fourteenth Amendment rights"); *id.* at 1017–18 (denying motion to dismiss filed by the defendant warden where the "[d]efendants' express reliance on the warden's authority and discretion to justify the modified programs at issue and deny plaintiff [] administrative relief are sufficient to show the warden's personal involvement in the alleged deprivations of plaintiff's rights").  There can be no liability under § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. *Rizzo v. Goode,* 423 U.S. 362, 378 (1976); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) ("[P]ersonal participation is not the only predicate for section 1983 liability.  Anyone who 'causes' any citizen to be subjected to a constitutional deprivation is also liable.").  "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson*, 588 F.2d at 743–44.

Here, defendants argue that plaintiffs' § 1983 claim should be dismissed because plaintiffs have not alleged that defendants were aware of the risk and *personally* took any specific actions that violated plaintiffs' Eighth Amendment rights.  (Doc. No. 16-1 at 5–6.)  Defendants emphasize that the FAC does not allege any specific conduct—any act or omission by defendants Diaz and Ndoh specifically—that caused plaintiffs to be assaulted by rival prison gang members.  (*Id.* at 6.)  Rather, according to defendants, the FAC describes a few sources of information that allegedly provided advance notice of the imminent risk of harm posed to plaintiffs from an attack by rival gang members, but the FAC stops short of alleging "any facts concerning how or when either individual defendant specifically gained actual knowledge of an imminent assault on

1  plaintiffs at Avenal State Prison."  (*Id.*)  Defendants contend that the FAC merely imputes

2  "general knowledge of a risk of prison gang violence" onto defendants because they are high-

3  ranking employees of CDCR and ASP.  (*Id.*)  Further, defendants contend that the FAC "alleges

4  no facts that establish either defendant had any personal role or involvement in the alleged failure

5  to protect them from members of rival prison gangs on September 29, 2018."  (*Id.* at 6–7.)

6          In their opposition to the pending motion, plaintiffs counter that their FAC states a

7  cognizable § 1983 claim because their allegations show that it is "more than plausible that

8  [defendants] had advance knowledge of the imminent attack, knew that the risk was serious and

9  grave, and both failed to act and/or was deliberately indifferent to it."  (Doc. No. 19 at 11.)

10  Plaintiffs point to the allegations in their FAC that defendants were deliberately indifferent to

11  plaintiffs' well-being because defendants had the "power to make any reasonable and lawful

12  orders to protect inmates from credible threats," and yet they "refused to give orders that would

13  have ensured a reasonable level of inmate safety."  (Doc. No. 15 at ¶¶ 35–37, 40–42.)

14  Specifically, defendants failed to "segregate plaintiffs from other groups upon learning of the

15  danger, instigating a policy that plaintiffs stay in the same space as their attackers despite

16  knowledge of the danger," failed to "allocate a sufficient number of guards to E and F blocks to

17  prevent the attack and/or quell the attack as soon as it commenced," and failed to "use

18  preventative measures such as putting a gunner in the blocks."  (*Id.* at ¶ 68.)

19          In reply, defendants assert that plaintiffs "provide nothing more than speculation and

20  innuendo" to support their contention that defendants were "aware" of the imminent threat to

21  inmate safety.  (Doc. No. 20 at 3.)  Defendants contend that plaintiffs' cannot maintain their

22  § 1983 claim against them merely because they hold supervisory positions as high-level prison

23  officials; rather, they can only be held liable for "culpable action, or inaction, [that] is *directly*

24  attributed to them."  (*Id.*) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) ("[W]hen a

25  supervisor is found liable based on deliberate indifference, the supervisor is being held liable for

26  his or her own culpable action or inaction, not held vicariously liable for the culpable action or

27  inaction of his or her subordinates.")).

28  /////

As to subjective awareness of the risk, defendants support their arguments primarily by relying on orders addressing motions for summary judgment, not motions to dismiss.  (Doc. No. 20 at 3–4) (citing *Harvey v. State of California*, 82 F. App'x 544, 545 (9th Cir. 2003)[3] (affirming a grant of summary judgment where the plaintiff failed to establish defendant's actual knowledge of a risk that plaintiff would be raped by his cellmate)).  In doing so, defendants appear to conflate plaintiffs' ultimate burden of proving that defendants had actual knowledge of the risk, with plaintiffs' burden at the pleading stage to allege enough facts sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *See Iqbal*, 556 U.S. at 678.  As one district court recently explained:

> [t]o prevail on this [Eighth Amendment failure-to-protect] claim ultimately, plaintiff will need to show that each defendant was aware of facts from which the inference could be drawn that an objective and substantial risk of serious harm existed and that each defendant drew such inference. *Farmer*, 511 U.S. at 837.  At this stage of litigation, plaintiff's factual allegations—when accepted as true and construed in the light most favorable to plaintiff—need only be sufficient to "plausibly suggest an entitlement to relief." *Starr v. Baca*, 652 F.3d 1202, 1217 (9th Cir. 2011) (internal quotation marks omitted); *see also Hearns* [*v. Terhune*, 413 F.3d 1036, 1043 (9th Cir. 2005)] ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.").

*Harmon v. Lewandowski*, No. 2:20-cv-09437-VAP-MRW, 2021 WL 1557745, at *3 (C.D. Cal. Mar. 8, 2021).  Moreover, as noted above, the question of whether a prison official had the requisite knowledge of a substantial risk of harm is ultimately a question of fact, and thus is not a question to be answered at the pleading stage of litigation.  *Farmer*, 511 U.S. at 842.  Rather, the appropriate question at this stage is whether plaintiffs have alleged not only the underlying facts from which an inference of risk to prisoner safety can be drawn, but also that defendants were aware of those underlying facts.

On that question, although it is a somewhat close call, the court concludes that plaintiffs have sufficiently alleged the existence of underlying sources of information from which an

---

[3] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1    inference can be drawn of imminent risk to plaintiffs' safety, and that defendants were aware of at

2    least some of those sources of information.  *See id.* (noting that a prison official's subjective

3    awareness of a substantial risk to prisoner safety can be inferred from circumstantial evidence).

4    As to two of the four sources of information alleged in the complaint, plaintiffs explicitly allege

5    that defendants were made aware of the M.A.G.E.C. communications (that the Mexican Mafia

6    and Surenos had green lit unprovoked attacks), and that defendants provided information to the

7    guards at ASP to make them aware of the imminent risk of a rival gang attack.  (Doc. No. 15 at ¶¶

8    28–29, 32, 43–44.)  As to the third source of information, the Corcoran incident, although

9    plaintiffs do not explicitly allege that defendants were aware of that Corcoran incident, plaintiffs

10   do allege that a sergeant identified as "KD" had stated to at least one of the plaintiffs "that the

11   Corcoran incident was mentioned as proof that the Avenal staff was aware of the risk of harm."

12   (*Id.* at ¶ 44.)  Again, according to plaintiffs' allegations, the guards at ASP were aware of the risk

13   of harm based on information provided to them by defendants, and thus these allegations taken

14   together suggest that defendants were aware of the Corcoran incident.  As to the fourth source of

15   information, the internal CDCR investigation documents, although plaintiffs describe the

16   documents in some detail, plaintiffs do not allege that defendants had received those documents

17   or were otherwise aware of them and the information contained therein.  Instead, plaintiffs merely

18   allege in conclusory fashion that, "per CDCR investigation documents," defendants had notice

19   that these rival gangs were "at war" and knew in advance of the attack that there was a particular

20   and credible threat.  (*Id.* at ¶ 30.)

21        Nonetheless, plaintiffs have alleged that defendants were aware of the other sources of

22   information from which an inference can reasonably be drawn that there was an imminent threat

23   to plaintiffs' safety.  Further, plaintiffs' allegations suggest that those sources of information led

24   defendants to draw an inference of imminent risk to plaintiffs' safety posed by a credible threat of

25   rival gang violence.  Those allegations are sufficient at the pleading stage.  *Cf. Dillingham v.

26   Johnson*, No. 4:13-cv-05777-YGR, 2016 WL 304762, at *10 (N.D. Cal. Jan. 26, 2016) (noting

27   that "deliberate indifference will not be found where there is no [] evidence in the record showing

28   /////

1   that the defendants knew of facts supporting an inference and drew the inference of substantial

2   risk to the prisoner") (citing *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1161 (9th Cir. 2013)).

3        Having concluded that plaintiffs have alleged sufficient facts in their FAC to show that it

4   is plausible defendants were aware of the risk of harm to prisoner safety, the court now turns to

5   the question of whether plaintiffs have also plausibly alleged that defendants "disregard[ed] that

6   risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.  Under this

7   standard, a prison official must have a "sufficiently culpable state of mind," one of deliberate

8   indifference to the prisoner's health or safety.  *Id.* at 834.  Deliberate indifference is more than

9   mere negligence but less than the intent to cause harm.  *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th

10  Cir. 2015).

11       In their FAC, plaintiffs allege defendants' duties and responsibilities related to inmate

12  safety, including that they have direct responsibility and power to create, implement, and verify

13  adherence to policies intended to ensure inmate safety.  (Doc. No. 15 at ¶¶ 33, 38.)  In particular,

14  plaintiffs allege that defendants were responsible for "separating and/or protecting inmates who

15  are subject to particular and credible threats from STGs or other inmates who are known to be

16  violent or aggressive" and "keeping abreast of particular and credible threats to inmates,"

17  including the MAGEC communications and CDCR investigative documents.  (*Id.* at ¶¶ 33, 34,

18  38, 39.)  Plaintiffs further allege that because defendants had these responsibilities and the power

19  to give orders to protect prisoners from credible threats, defendants "set in motion the series of

20  events that left plaintiffs completely exposed to the known and credible threat presented by their

21  attackers" and "deliberately set in place inadequate policies, ignored important information, or

22  refused to give orders that would have ensured a reasonable level of inmate safety."  (*Id.* at ¶¶ 35–

23  42.)

24       The court finds that plaintiffs' allegations are sufficient to plausibly allege the requisite

25  causal connection and to also plausibly allege that defendants disregarded the risk to plaintiffs'

26  safety by failing to implement preventative measures that were not only within their power to

27  implement but were also measures that had been employed on prior occasions to protect similarly

28  situated prisoners who faced credible threats of rival gang violence.  (*See* Doc. No. 15 at ¶¶ 67–

14

71).  Taken as true, plaintiffs' allegations show that defendants were aware of the substantial risk of serious harm posed by the credible threat of rival gang violence, and that despite their constitutional duty to "take reasonable measures to guarantee the safety of . . . inmates," *Hudson*, 468 U.S. at 526–27, they failed to take measures to prevent the attack that occurred on September 29, 2018.  At the pleading stage, that is all that is required for plaintiffs to survive dismissal of their § 1983 claim of deliberate indifference to prisoner safety.  *See Marella v. Terhune*, No. 3:03-cv-0660-BEN-AJB, 2005 WL 8160129, at *10 (S.D. Cal. Feb. 7, 2005) (denying motion to dismiss failure-to-protect claim where the plaintiff "alleged that [defendant Director of the California Department of Corrections] C. Terhune was aware of the threat to Plaintiff's safety, had a duty to protect Plaintiff, and failed to prevent the assault" by two prison gang members who stabbed and beat plaintiff).  In *Marella*, the district court emphasized that "[t]o the extent Defendants contend Plaintiff is unable to prove these allegations, such an argument is more appropriately raised in a summary judgment motion."  *Id.*  Here too, to the extent defendants argue that they were not, in fact, personally involved—i.e., that they did not have any role in deciding whether to segregate prisoners, whether to increase guard presence, whether to place a gunner in the E and F blocks, or whether to undertake any other reasonable measures to prevent the rival gang attack—those arguments do not support their motion to dismiss.  Notably, defendants do not advance the argument that even if they were involved in those decisions, such alleged inactions would nevertheless not rise to the level of deliberate indifference to prisoner safety.

Accordingly, the court will deny defendants' motion to dismiss plaintiffs' § 1983 claim of deliberate indifference to prisoner safety in violation of the Eighth Amendment, as brought against defendants in their individual capacities.

3.    Plaintiffs' § 1985 and § 1986 Equal Protection Claims (Fourteenth Amendment)

Defendants also move to dismiss plaintiffs' § 1985 claim of conspiracy to deprive plaintiffs' of their equal protection rights and plaintiffs' § 1986 claim of neglect to prevent interference with their equal protection rights.  (Doc. No. 16-1 at 6–9.)

/////

1    In their FAC, plaintiffs essentially allege that they were denied the equal opportunity to

2    program because unidentified "CDCR employees" did not tell plaintiffs that their refusal to

3    participate in the new gang disassociation program would result in the denial of their access to

4    programming, whereas their attackers (members of a different gang) were given continued access

5    to programming.  (Doc. No. 15 at ¶¶ 55–57, 80.)

6    In their pending motion, defendants argue that plaintiffs have not alleged that defendants

7    were personally involved in the alleged deprivation of their equal protection rights or in

8    neglecting to prevent such alleged deprivation.  (Doc. No. 16-1 at 7.)  Specifically, plaintiffs

9    emphasize that "[p]laintiffs allege that unidentified prison officials—not Ndoh or Diaz—failed to

10   disclose the details of a program designed to *benefit* gang-affiliated inmates."  (*Id.* at 7–8.)

11   According to defendants, "[t]aking those allegations as true at the pleading stage, and assuming

12   that Ndoh and/or Diaz were even responsible for creating that program, Plaintiffs merely allege

13   that some unknown subordinate employee wrongfully withheld information about that program."

14   (*Id.* at 8.)  That is, defendants argue that plaintiffs do not allege that the disassociation program

15   was itself the moving force behind any alleged constitutional violation.  (*Id.*)

16   In their opposition, plaintiffs do not meaningfully address or counter defendants'

17   arguments in this regard, but they do request leave to amend.  (Doc. No. 19 at 12–13.)

18   The court agrees with defendants that plaintiffs have not stated cognizable claims under

19   § 1985 and § 1986 in their FAC.  Accordingly, the court will grant defendants' motion to dismiss

20   these claims brought against defendants in their individual capacities, with leave to amend.

**CONCLUSION**

22   For all of the reasons set forth above:

23   1.    Defendants' motion to dismiss (Doc. No. 16) is granted, in part;

24         a.    Plaintiffs' claims against defendants in their official capacities are

25               dismissed without leave to amend;

26         b.    Plaintiffs' state law negligence claim, § 1985(3) claim, and § 1986 claim

27               against defendants in their individual capacities are dismissed, with leave

28               to amend;

16

        c.      Defendants' motion to dismiss plaintiffs' § 1983 claim of deliberate indifference to inmate safety against defendants in their individual capacities is denied;

2.    Any second amended complaint that plaintiffs may elect to file in this action, consistent with the leave to amend granted by this order, shall be filed within twenty-one (21) days after the issuance of this order;

3.    In the event no second amended complaint is filed, defendants shall file their answer to the remaining cause of action within fourteen (14) days of the date by which any second amended complaint had to be filed;

4.    The Clerk of the Court is directed to update the docket to reflect that California Department of Corrections and Rehabilitation and Avenal State Prison are no longer named defendants in this action; and

5.    There are only two remaining named defendants in this action:  CDCR Secretary Ralph Diaz and Warden Rosemary Ndoh.  The Clerk of the Court is directed to correct the docket to terminate the duplicate listing of defendant "Ndoh."

IT IS SO ORDERED.

Dated:   __**April 8, 2022**__                                _____

                                          UNITED STATES DISTRICT JUDGE