UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MELENDEZ, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>DIAZ, et al.,<br><br>　　　　　Defendants. | Case No. 1:20-cv-01393-ADA-CDB  (PC)<br><br>**ORDER GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL**<br><br>(Doc. 61) |

　　　Before the Court is Plaintiffs' Motion to Compel Production of Documents, filed June 9, 2023, in which plaintiffs Melendez, Pajarillo, Canales, Castro, Gaitan, Hernandez, Espinoza, Manjaraz, Mendoza, Salazar, Bernard and Garcia ("Plaintiffs") request defendants Diaz and Ndoh ("Defendants") produce documents responsive to Plaintiffs' First Request for the Production of Documents, served on January 17, 2023. (Doc. 61).  Defendants filed an opposition on June 16, 2023 (Doc. 63) and lodged the discovery documents at issue with a request to seal and for the Court to review *in camera*, which the Court granted (Doc. 65).  Plaintiffs filed a reply in support of the pending motion on June 20, 2023.  (Doc. 66). The parties appeared in Court via Zoom videoconference and presented argument during a motion hearing on June 21, 2023.  (Doc. 67). For the reasons preserved on the record during that hearing and as set forth below, the Court issues the following rulings.

**I.      Factual Background.**

    A.  Plaintiffs' Claims

According to Plaintiffs' First Amended Complaint, Plaintiffs were affiliates of the Fresno Bulldogs Security Threat Group (STG) and housed in an area of Avenal State Prison that included members of rival STGs, during the relevant time. (Doc. 15, p. 9). On September 29, 2018, Plaintiffs were subjected to a coordinated attack from members of rival STGs. Plaintiffs aver that Defendants had advance notice of a threat to Plaintiffs' safety but failed to take reasonable steps to protect them. (Doc. 15, ¶ 7).

Plaintiffs further allege that once they returned from the hospital after the attack, prison officials repeatedly attempted to get them to disaffiliate with their STG. When Plaintiffs declined to disaffiliate, the prison officials punished them by denying Plaintiffs access to rehabilitative programs. (Doc. 15, p. 5-6).

Following the Court's earlier order on Defendants' motion to dismiss, Plaintiffs' action proceeds on a claim under 42 U.S.C.§ 1983 for deliberate indifference to inmate safety in violation of the Eighth Amendment to the U.S. Constitution. (Doc. 26). Plaintiffs seek money damages as well as an order from the Court granting them equal access to the rehabilitative programs. (Doc. 15, p. 23).

    B.  Plaintiffs' Motion to Compel

On May 12, 2023, the parties filed a stipulation for order extending discovery and pretrial motion filing dates due to, among other things, the parties' challenges in finalizing a stipulated protective order. (Doc. 53). On May 16, 2023, the Court granted the parties' request in part. (Doc. 54). Thereafter, as the parties were unable to reach consensus on a protective order, on May 25, 2023, the Court convened a status conference with the parties and, following discussion, set a briefing schedule for Plaintiffs' anticipated motion to compel. (Docs. 58, 59).

At issue are 504 pages of documents that Defendants concede are responsive to Plaintiffs' First Request for the Production of Documents and which Defendants have withheld from production given the asserted confidential and sensitive nature of the content of those documents. (Defendants' Opposition ["Opp."] pp. 1, 3, Doc. 63; R. Villalba Declaration ["Villalba Decl."] ¶¶

1 3-4, Doc. 63-1).  Defendants represented both in their motion papers and during the motion
2 hearing that they are prepared to produce all of the subject documents pursuant to an appropriate
3 protective order.  Opp. p. 1.
4      In support of their opposition to Plaintiffs' motion to compel, Defendants proffer the
5 declaration of Correctional Sergeant R. Villalba, a 20-year employee of the California
6 Department of Corrections and Rehabilitation (CDCR) with recent experience in the areas of
7 gang intelligence and investigations.  According to Sgt. Villalba, the documents at issue are kept
8 confidential by CDCR in accordance with California law or, in instances where they are not
9 strictly confidential for all purposes, disclosure could present a risk due to the unique
10 circumstances present in this case.  Villalba Decl. ¶ 3.  Defendants identify specific categories of
11 documents and attest that they are sensitive in this case because, among other things, they identify
12 prison staff who responded to the violent incident at issue in the case and the gang members
13 involved, including inmates and individuals who have been released or are being contemplated
14 for release outside of CDCR.  *Id.* ¶ 5.  Although Defendants acknowledge some of these
15 categories of documents have been produced in other cases without a protective order, because
16 this case involves a violent uprising between inmates of rival STGs and it is not possible to know
17 what information a STG will find valuable, a protective order is necessary.  *Id.* Defendants
18 represent further that documents describing modified programs initiated in response to the violent
19 incident, photographs, and use of force documents likewise are sensitive and should remain
20 confidential because they could be used improperly by inmate gang members to the detriment of
21 facility safety.  *Id.* ¶¶ 6-9.
22      Defendants additionally assert that four documents responsive to Plaintiffs' discovery
23 request warrant heightened protections:
24      (1) A confidential memorandum prepared by Investigative Sergeant R. Amaro describing
25 information received from an inmate confidential informant regarding which inmates played a
26 pivotal role in the violent incident that is at issue in the case (OAG 671-674);
27      (2) A confidential investigative report that identifies the inmate suspects involved in the
28 incident and a confidential discussion of the gang prison politics that played a part in that incident

3

1  (OAG 657-689);

2  (3) A confidential memorandum planning document authored by Complex 3 Captain B.
3  Sunamoto describing the incident, the response to the incident, and interviews with participants
4  (OAG 830-853); and

5  (4) A Confidential Intelligence Report authored by Investigative Sergeant R. Amaro,
6  (OAG 854-860).

7  *Id.* ¶ 4.

8       1.    Defendants' Position on Protective Order

9  Defendants maintain that the documents sought by Plaintiffs be produced only pursuant to
10 a protective order that (a) requires counsel for Plaintiffs' legal assistant, Ms. Amanda Melendez,
11 to disassociate from working on the case entirely, (b) grants "attorney's eyes only" status to all
12 504 pages of the documents, and (c) permits Defendants to apply limited redactions to the
13 identifying information of certain confidential informants and witnesses where they appear in the
14 four specific documents mentioned above.

15 Ms. Melendez is the spouse of Plaintiff John Melendez and has been employed by
16 Plaintiffs' counsel as a legal assistant since September 2018.  (Plaintiff's Motion ["Mot."] p. 6,
17 Doc. 61).  During the motion hearing, Plaintiffs' counsel stated his relationship with Ms.
18 Melendez began when she began voluntarily providing him information about the case involving
19 her husband (what ultimately was filed as this case), after which he hired her on an hourly basis
20 and she worked solely on that case.  At some point, Ms. Melendez's duties and responsibilities as
21 counsel's employee expanded to include additional cases and taskings.  Counsel maintains that
22 Ms. Melendez "has been very active and vocal" in connection with the events involved in this
23 case.  *Id.* p. 7.  Counsel reported that Ms. Melendez works between ten and 20 hours per week
24 and engages in litigation support activities such as reviewing and synthesizing discovery and
25 coordinating with corrections facility staff.  Counsel also reported that Ms. Melendez is more
26 familiar with the facts of this case than he is as she has reviewed every page of discovery
27 produced.  Counsel conceded that Ms. Melendez may be a fact witness during trial. Ms. Melendez
28 also has a close relationship with co-Plaintiff Freddy Mendoza, who referred to Ms. Melendez

1  during his deposition as his "sister" because she supported him throughout his term of
2  incarceration, supported his wife and children, and provided Mendoza with a place to stay for
3  several months after he was discharged from prison. (Juliet Lompa Declaration ["Lompa Decl."]
4  ¶ 4 & Ex. C, Doc. 63-2).

5  On October 4, 2019, Plaintiffs' counsel represented Ms. Melendez and filed suit on her
6  behalf against the same Defendants named in this case. The action was removed to this Court on
7  February 26, 2020. *See Melendez v. Diaz et al.*, No. 1:20-cv-00302-DAD-BAM (Doc. 1). In that
8  action, Ms. Melendez sought to recover for her own damages sustained as a result of the injuries
9  her husband suffered during the same violent incident that is at issue in this case. Among other
10 things, Ms. Melendez sought to recover for severe emotional distress, "including suffering,
11 anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame," loss of
12 consortium, and denial of her civil rights as a married person. (Doc. 1, Complaint, ¶¶ 1, 2, 37, 41,
13 43). That action was dismissed with prejudice after counsel neglected to respond to the
14 defendants' motion to dismiss, disobeyed a court order to respond to the motion, and ignored a
15 show cause order directing counsel to submit a written response. *Id.* Docs. 10, 11, 13.

16 Given Ms. Melendez's relationship to her husband and another Plaintiff in the action, her
17 intimate knowledge and involvement thus far in the case, the gang-related nature of the key
18 events in the case, and Ms. Melendez's prior position as a plaintiff seeking to recover damages
19 she suffered based on the same events at issue in this case, Defendants maintain that she should
20 be prohibited from working on the case entirely. Villalba Decl. ¶ 11. Defendants attest that a
21 protective order would not eliminate the substantial risks of harm to the significant safety and
22 security interests at stake in disclosure of the documents while Ms. Melendez remains involved in
23 the prosecution of the case. *Id.* ¶¶ 11-13.

24 Aside from walling-off Ms. Melendez from working on the case, given the sensitive
25 nature of the information contained in the documents at issue, Defendants also maintain that the
26 documents be produced only pursuant to an "attorneys' eyes only" protective order. Pursuant to
27 that protective order, the documents at issue could only be received and reviewed by counsel,
28 certain of counsel's employees and experts, and witnesses during depositions as necessary.

1  Finally, Defendants seek to redact identifying information of certain confidential informants and
2  witnesses where they appear in the four specific documents identified above.[1]

### 2. Plaintiffs' Position on Protective Order

Plaintiffs do not object to Defendants' production of the subject documents pursuant to a protective order that permits redactions of informant and witness identifiers – provided the protective order includes a mechanism to challenge the redactions – and restricts access to the documents. (Plaintiff's Reply ["Reply"] pp. 6-8, Doc. 66). However, Plaintiffs oppose Defendants' demand that Ms. Melendez be walled-off from further work on the case. According to Plaintiffs, a protective order that prohibits disclosure to Ms. Melendez of the documents at issue will adequately mitigate any risks associated with production. *Id.* p. 7. Plaintiffs proffer that because Ms. Melendez has specialized knowledge of CDCR policies and personnel and detailed knowledge of the case, barring her from continued participation in the litigation of the case would result in prejudice. (D. Shawn Burkley Declaration ["Burkley Decl."] ¶¶ 3, 9, 10, Doc. 61-1). Counsel attests that removing Ms. Melendez from his team would "seriously hinder" his ability to prosecute the case, in part because he is a solo practitioner with limited resources. *Id.* ¶¶ 2, 10.

## II. Standard of Law

Generally, if a party responding to a discovery request objects to complying with the request, the party seeking production may seek relief from court through a motion to compel. "[T]he party moving to compel bears the burden of demonstrating why the [responding party's] objections are not justified." *Harris v. Quillen*, No. 1:17-cv-01370-DAD-SAB (PC), 2020 WL 4251069, at *1 (E.D. Cal. June 5, 2020) (citing cases). "This requires the moving party to inform the Court which discovery requests are the subject of the motion to compel, and, for each disputed response, why the information sought is relevant and why the responding party's

---

[1] In their opposition papers, Defendants also suggested redacting the content of the statements given by informants and witness, as well as the content of documents showing CDCR's plan for responding to dangerous activities by prison gangs. Opp. p. 3. However, during the motion hearing, Defendants' counsel clarified that they request only to redact informant and witness identifying information in the four specific documents identified above.

6

1 objections are not meritorious." *Id.*

2 The discoverability of official documents should be determined under a "balancing
3 approach that is moderately pre-weighted in favor of disclosure." *Kelly v. City of San Jose*, 114
4 F.R.D. 653, 661 (N.D. Cal. 1987). At the same time, courts recognize that disputed discovery
5 demands made in the prison context present unique equities. "[W]here otherwise discoverable
6 information would pose a threat to the safety and security of the prison or infringe upon a
7 protected privacy interest, a need may arise for the Court to balance interests in determining
8 whether disclosure should occur." *Id.* (citing, *inter alia*, *Garcia v. Clark*, No. 1:10-CV-00447-
9 LJO-DLB PC, 2012 WL 1232315, at *6 n.5 (E.D. Cal. Apr. 12, 2012) (noting inmate's
10 entitlement to inspect discoverable information may be accommodated in ways which mitigate
11 institutional safety concerns); *Robinson v. Adams*, No. 1:08-cv-01380-AWI-BAM PC, 2012 WL
12 912746, at *2-3 (E.D. Cal. Mar. 16, 2012) (issuing protective order regarding documents
13 containing information which implicated the safety and security of the prison); *Orr v. Hernandez*,
14 No. CV-08-0472-JLQ, 2012 WL 761355, at *1-2 (E.D. Cal. Mar. 7, 2012) (addressing requests
15 for protective order and for redaction of information asserted to risk jeopardizing safety and
16 security of inmates or the institution if released); *Womack v. Virga*, No. CIV S-11-1030 MCE
17 EFB P, 2011 WL 6703958, at *5-6 (E.D. Cal. Dec. 21, 2011) (requiring defendants to submit
18 withheld documents for in camera review or move for a protective order).

19 Moreover, "courts have approved attorneys' eyes only designations as a means of
20 balancing prison security concerns against an inmate's right of access to relevant discovery."
21 *Reese v. Liberty*, 2019 WL 5549219, at *3 (D. Me. Oct. 25, 2019) (citing cases).

22 **III.   Discussion**

23 The Court has reviewed *in camera* the 504 pages of documents at issue in the light of the
24 Villalba Declaration. The Court concludes the Villalba Declaration makes a "substantial
25 threshold showing" that the documents properly are subject to a qualified privilege for official
26 information. *See Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 2017). In particular,
27 Sgt. Villalba affirms: (1) that CDCR generated or collected the material at issue and has in fact
28 maintained its confidentiality; (2) that Sgt. Villalba personally reviewed the material in question;

(3) that identified interests would be threatened by disclosure of the material to Plaintiffs; (4) how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests; and (5) how much harm would be done to the threatened interests if the disclosure were made. *Harris*, 2020 WL 4251069, at *3 (citing *Soto*, 162 F.R.D. at 613).

Thus, the court concurs that the documents submitted by Defendants contain confidential information, which should not be disclosed. However, Defendants' claims of privilege do not justify withholding disclosure of these relevant documents if redacted and subject to a protective order. "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "The Ninth Circuit recognizes that district courts have great flexibility to protect documents that contain confidential or commercially sensitive information." *Bryant v. Romero*, No. 1:12-cv-02074-DAD-GSA-PC, 2017 WL 495634, at *5 (E.D. Cal. Feb. 6, 2017) (quoting *Cabell v. Zorro Prods., Inc.*, 294 F.R.D. 604, 610 (W.D. Wash. 2013)).

The Court perceives from the parties' motion papers and their arguments during the motion hearing that there is general consensus that the documents at issue may be produced pursuant to a protective order that limits access and permits redactions of informant and witness identifying information, so long as the protective order permits a party to seek relief from Court if it disputes the nature or basis of a disclosure or restriction or challenges the propriety of a redaction. Accordingly, the Court will conduct a balancing analysis to determine the nature of protection that should be accorded the documents prior to their production. *E.g.*, *Ibanez v. Miller*, No. CIV S-06-2668 JAM EFB P, 2009 WL 3481679, at *3 (E.D. Cal. Oct. 22, 2009) (weighing nature and gravity of harm likely to result from disclosure against prejudice to plaintiff by restricting disclosure).

The Court agrees with Defendants that the information contained in the documents at issue is highly sensitive and deserving of heightened protection. Defendants make an adequate showing that specific types of information contained in the documents could be used by current or future inmates to undermine corrections officers' efforts to maintain the safety and integrity of the

facility. Among other things, Sgt. Villalba attests that "an incident report describing how staff responded to the Incident may seem innocuous, but when it involves a STG it could contain valuable information, or identify participants not previously known placing those inmates' lives in danger." Villalba Decl. ¶ 5. Likewise, Sgt. Villalba attests that Use of Force Review documents are sensitive because they depict how a use of force investigation is conducted and reveal the strategy officers employ in responding to critical incidents, which "is advantageous to gang members in circumventing security measures." *Id.* ¶ 8. Similarly, Sgt. Villalba establishes that photographs "may provide a view of the prison facilities that would not normally be accessible to inmates, areas of the prison or details of the housing unit that could be valuable for planning future incidents or evading staff detection," and may "be used for identifying individuals who participated in or did not participate in an incident." *Id.* ¶ 7.

Because Defendants have produced evidence that the materials at issue contain sensitive information that could be used to thwart corrections officers' efforts to maintain security of the facility and/or pose a risk to officer safety, a strong protective order is appropriate. *See, e.g., Beebee v. Andrews*, 2022 WL 621782, at *2 (D. Alaska Mar. 3, 2022) (crediting prison officials' argument that disclosure of certain video showing the operations of a secure facility created a security risk for corrections staff and prisoners; "ensuring prison safety" proper basis to enter protective order); *Avery v. Wellpath, LLC*, 2021 WL 5500479, at *1 (D. Me. Nov. 21, 2021) (crediting prison officials' argument that disclosure of prison security plans to non-attorneys could be used in a way that jeopardizes the safety of correctional staff and/or residents at the prison).

On the other side of the balance, the Court considers the prejudice that would result from a protective order along the lines proposed by Defendants – including the exclusion of Ms. Melendez from continued involvement in assisting with Plaintiffs' prosecution of the case.

First, while the Court acknowledges counsel for Plaintiffs' representations about the value Ms. Melendez provides to his litigating team, it remains unclear how barring her from continued involvement in the case would, as counsel proffers, "seriously hinder" his ability to represent Plaintiffs. Burkley Decl. ¶ 10. The Court attempted to explore with counsel during the motion

9

hearing the precise nature of Ms. Melendez's proffered specialized knowledge and expertise that may be lost were she removed from the case. However, counsel offered only that Ms. Melendez (1) has superior knowledge of the facts of the case through her personal involvement in the case and review of discovery, (2) has particular competence navigating CDCR lines of communication, and (3) assists with client and witness communications. As Defendants point out in their opposition, non-expert discovery largely is complete, including depositions of in-custody parties, and counsel for Plaintiff already has the benefit of Ms. Melendez's involvement in the case through the 11 months that fact discovery has been ongoing. Opp. p. 9. While the Court recognizes that counsel for Plaintiffs is a solo practitioner with limited resources, he confirmed during the motion hearing that he does employ another paralegal that, presumably, could assist with some or all of the tasks Ms. Melendez attends to were she excluded from further involvement in the case.

Second, the Court weighs whether an "attorneys' eyes only" restriction that prohibits disclosure of the documents to Ms. Melendez would adequately protect Defendants' safety and security interests. Given the long history of Ms. Melendez's involvement in the prosecution of the case – including as a plaintiff alleging severe emotional and familial injuries related to the precise events at issue here and as a legal assistant/paralegal assisting lead counsel in his representation of eight plaintiffs, including two of whom with which Ms. Melendez maintains a close relationship (her husband and another admitted gang-affiliated plaintiff) – the Court concludes Ms. Melendez's continued participation in the prosecution of the case would present an unreasonable risk of disclosure of sensitive information (whether intentional or inadvertent) that could substantially jeopardize the safety of correctional staff and inmates. The unique circumstances of Ms. Melendez's involvement and history in this case, coupled with the dire consequences that could result from any disclosure of the highly sensitive information contained in the subject documents, persuades the Court that walling-off Ms. Melendez is an appropriate mitigating measure the will not cause Plaintiffs undue prejudice in proceeding with the litigation.

Although counsel for Plaintiffs suggested during the motion hearing that requiring Ms. Melendez to agree to be bound to the terms of a protective order would sufficiently mitigate the

risks associated with disclosure of sensitive information in this case, the Court disagrees. *See Allergan, Inc. v. Teva Pharm. USA*, 2017 WL 772486, *4 (E.D. Tex. Feb. 28, 2017) (rejecting argument that any prejudice of disclosure of confidential documents to non-attorney designees could be mitigated by requiring the designees to sign the protective order; "non-attorney designees are not officers of the court, are not bound by the same Code of Professional Responsibility, and are not subject to the same sanctions. They cannot be disbarred or disciplined in the same way, and therefore they do not face similarly serious consequences for breach of the protective order.").

### IV.     Conclusion and Order

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's motion to compel, filed on June 9, 2023 (Doc. 61) is granted;

2. Within seven days from the date of service of this order, Defendants shall produce to counsel for Plaintiffs the documents submitted to the Court for *in camera* inspection (Doc. 64) marked OAG 0357-0860, bearing a "Confidential – Attorney's Eyes Only" banner, pursuant to the protective order the Court will enter separately and concurrent with this Order.

3. Defendants may apply redactions only to identifying information for any confidential informant or witness named in the four highly sensitive documents addressed herein (OAG 671-674, 657-689, 830-853, 854-860).

4. Consistent with the protective order entered concurrently herewith, counsel for Plaintiffs shall abide by the restrictions set forth therein prohibiting Ms. Melendez from further involvement in this action.

IT IS SO ORDERED.

Dated:   **June 23, 2023**                                   _____
                                                                         UNITED STATES MAGISTRATE JUDGE