1
2
3
4
5
6
7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    JOHN MELENDEZ, et al.,                    Case No. 1:20-cv-01393-ADA-CDB (PC)

12                    Plaintiffs,               ORDER ON PLAINTIFFS' MOTION TO
                                                MODIFY SCHEDULING ORDER
13            v.
                                                (Doc. 76)
14    RALPH DIAZ, et al.,

15                    Defendants.

16

17

18           Pending before the Court is Plaintiffs' Motion for Modification of the Scheduling Order.

19    (Doc. 76).  Defendants filed an Opposition on August 7, 2023.  (Doc. 78).  Plaintiffs did not file a

20    Reply and the time to do so has passed.  For the reasons set forth below, the Court makes the

21    following rulings.

22    **I.      Background**

23           Plaintiffs filed their original complaint on September 28, 2020.  (Doc. 1). Under the

24    operative First Amended Complaint, they raise civil rights claims under 42 U.S.C. §§ 1983, 1985,

25    1986, and 1988(b)(c), as well as a claim for common law negligence.  (Doc. 15 p. 1). During the

26    relevant time, Plaintiffs were inmates at Avenal State Prison and part of a security threat group

27    ("STG") known as the "Bulldogs."  (*Id*. at 4)   Plaintiffs allege that on September 29, 2018, they

28    were violently attacked by an estimated 180 other inmates (hereinafter, the "Incident").  (*Id*.)

1   These other inmates were alleged members from rival STGs who were directed by their

2   organizations to attack the Bulldogs.  (*Id*. at 4).  Plaintiffs claim that the attack lasted for about

3   half an hour and that they suffered serious injuries as a result of the attack. (*Id*.).

4        Plaintiffs allege that Defendants had advance notice that an attack was imminent, but

5   acted with deliberate indifference when they took no steps to either prevent the attack or

6   effectively defend the Plaintiffs while the attack was occurring.  (*Id*. at 5).

7        The Court issued a Scheduling Order setting all case management dates in this case on

8   July 28, 2022. (Doc. 31).  On January 12, 2023, the Court granted the parties' stipulated request

9   to amend the Scheduling Order.  (Doc. 36).  The parties filed a second stipulated request to

10   amend the Scheduling Order on May 15, 2023.  (Doc. 53). The Court granted the second

11   stipulated request, but also directed the parties to file a stipulated protective order by May 19,

12   2023, or alternatively appear for a status conference on May 22, 2023.  (Doc. 54).

13        The Court convened a status conference with the parties on May 25, 2023.  (Doc. 59).

14   During the conference, Defendants revealed that they possessed approximately 300 pages of

15   sensitive documents that were responsive to Plaintiffs' discovery requests but were being

16   withheld for security reasons. (*Id*. at 1).  Because the parties were unable to agree on a protective

17   order, on June 9, 2023, Plaintiffs filed a Motion to Compel.  (Doc. 61).  The Court granted

18   Plaintiff's Motion to Compel in part on June 23, 2023.  (Doc. 68).  In addition, the Court filed a

19   Protective Order applicable to the withheld documents subsequently produced by Defendants.

20   (Doc. 69).

21        On July 19, 2023, Plaintiffs deposed Defendant Rosemary Ndoh ("Defendant Ndoh").

22   (Doc. 76).  Ndoh was the Defendant for Avenal State Prison during the date of the Incident.  (*Id*.

23   at p. 4).  Defendant Ndoh's deposition took place approximately nine days before the close of

24   nonexpert discovery.  (Doc. 54).

25        At some point during her deposition.  Defendant Ndoh stated that she did not remember a

26   single thing about the day of the Incident.  (Doc. 78-1 p. 61). Counsel for Plaintiffs asked

27   Defendant Ndoh why she could not recall these events and ultimately Plaintiffs' counsel

28   discovered Defendant Ndoh suffered from a medical condition impacting her memory.  (Doc. 78-

1 p. 62). Plaintiffs' counsel avers that since Defendant Ndoh is unable to recall the Incident, Plaintiffs now require additional time to conduct numerous depositions and written discovery to compensate for the information Defendant Ndoh was expected to have provided. Further, Plaintiffs claim that their recent discovery of Defendant Ndoh's medical condition affecting her memory warrants additional discovery regarding Defendant Diaz's and CDCR's knowledge of the warden's medical condition at the time of her promotion to and maintenance at the position of warden because it may support their claims of deliberate indifference. Plaintiffs request that the Court extend all case management dates relating to both nonexpert and expert discovery and motion briefing schedules by approximately 45-days because Defendant Ndoh's unexpected memory issues created a material impediment to Plaintiffs' discovery efforts. (Doc. 76 p. 6). On July 25, 2023, the Court stayed discovery in this matter pending resolution of Defendants' then-pending Motion for Summary Judgment as well as the present motion to modify the scheduling order. (Doc. 77).[1]

## II.    Standard of Law

District courts enter scheduling orders to "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3). Once entered, a scheduling order "controls the course of the action unless the court modifies it." Fed. R Civ. P. 16(d). Scheduling orders are intended to alleviate case management problems. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992).

"A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Id*. (quotation and citation omitted). Under Federal Rule of Civil Procedure 16(b), a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. If the

---

[1] On September 5, 2023, the assigned district judge adopted the undersigned's findings and recommendations to dismiss eight Plaintiffs for failure to exhaust administrative remedies. (Doc. 80). On September 14, 2023, Plaintiffs filed a notice in which they express an intention to file a motion pursuant to Rule 60 no later than September 22, 2023. (Doc. 81). While the Court appreciates counsel's courtesy insofar as he anticipates a Rule 60 motion might affect the timing of the Court's ruling on Plaintiffs' motion to modify the scheduling order, the Court concludes that disposition of Plaintiffs' instant motion is ripe, notwithstanding any forthcoming Rule 60 motion.

moving party is unable to reasonably meet a deadline despite acting diligently, the scheduling order may be modified.  *Id*.  If, however, the moving party "'was not diligent, the inquiry should end' and the motion to modify should not be granted."  *Zivkovic. v. So. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting *Johnson*, 975 F.2d at 609). In part, "good cause" requires a party to demonstrate that "noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 Scheduling conference. . ."  *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999).

**III.    Discussion**

As set forth above, good cause primarily considers the diligence of the party seeking the amendment.  *Johnson*, 975 F.3d at 609.

As a general matter and as this Court previously has expressed, Plaintiffs have not undertaken the prosecution of this case with exemplary diligence.  To start, Plaintiffs waited more than five months after discovery opened before propounding written discovery requests on Defendants. (Doc 78-1 ¶ 6).  By the time they were served, Plaintiffs' requests were untimely because they demanded Defendants' responses outside the period established for taking nonexpert discovery.  *Id*.  Counsel for Plaintiffs attributed this to possibly having "mis-calendared" the associated case management dates. *Id*. Ex. B.  Further, Plaintiffs requested three extensions of time to respond to the written discovery propounded by Defendants.  *Id*. ¶ 4; (Doc. 35 p.2).  While the Court acknowledges the challenges inherent in counsel's efforts to coordinate discovery with 12 incarcerated Plaintiffs, he cannot be held blameless for these deficiencies after having jointly requested the very nonexpert discovery schedule that the Court entered – with an admonishment that "stipulations to continue set dates are disfavored."  (Docs. 30, 31).

In a further demonstration of unsatisfactory diligence on the part of Plaintiffs' counsel, when Defendants filed their anticipated motion for partial summary judgment, Plaintiffs failed to timely oppose.  (Doc. 40).  Weeks after the opposition was due, counsel for Plaintiffs sought relief to file an untimely opposition, attesting that he had "inadvertently" mis-calendared the deadline.  (Doc. 41-1 ¶ 5).

Even after the Court granted the parties' first request for an extension of discovery dates, Plaintiffs continued to demonstrate a lack of diligence, including a three-month delinquency in responding to Defendants' interrogatories, prompting the Court at the mid-discovery status conference on April 19, 2023, to direct counsel for Plaintiffs to exercise better diligence.  (Docs. 48, 50)

While their lack of diligence in general cannot be excused, the Court is mindful that Plaintiffs' present motion to extend discovery is a product in part of Defendants' acknowledged withholding of large of amounts of documents until an appropriate protective order recently was agreed upon.  Specifically, the scheduling of Defendant Ndoh's deposition was delayed until after Defendants produced to Plaintiffs on June 26, 2023, approximately 500 pages of documents subject to the protective order.  At that time, there was approximately one month remaining in the time to complete nonexpert discovery.  According to Plaintiffs, their present request to extend discovery to take an unidentified number of additional depositions – at least ten[2] more depositions - only became necessary after they discovered during her deposition that Defendant Ndoh suffers from a significant memory deficiency.

However, a number of factors suggest Plaintiffs could have and should have anticipated much earlier that (1) Defendant Ndoh might not be the best suited witness to answer all the questions Plaintiffs presented to her during deposition, and (2) other defense witnesses with relevant knowledge were available for deposition on topics for which Plaintiffs sought testimony. For instance, in Interrogatory No. 1, Plaintiffs sought to discover when and how Defendant Ndoh first received threat information pertaining to the Incident.  In answering this interrogatory, Defendant Ndoh attested that she received threat information from the Investigative Services Unit (ISU) but did not recall when she received it.  Thus, as early as April 2023 when Defendant Ndoh answered Plaintiffs' interrogatories, Plaintiffs were on notice that a deponent from ISU likely was

---

[2] Plaintiffs request to take depositions of all subordinate wardens, the officer of the day on the date of the Incident and day prior, four cell block officers and their supervisors, and an unidentified number of investigating officers (Doc. 76-1 ¶ 20), which would exceed the presumptive 10-deposition limit under Rule 30.  Plaintiffs bear the burden of demonstrating that the requested depositions are both necessary and non-duplicative; they have not met that burden here.  *E.g., Nevis v. Rideout Memorial Hosp.*, No. 2:17-cv-02295-JAM-AC, 2019 WL 5596938, *3 (E.D. Cal. Oct. 30, 2019).

1  better suited to address the subject of Interrogatory No. 1 than Defendant Ndoh.

2         In Interrogatory No. 3, Plaintiffs sought to discover documents CDCR issued during an

3  identified timeframe referencing one of the gangs involved in the Incident (the Bulldogs).

4  Defendant Ndoh identified a number of documents, including several ascribed to authors,

5  specifically:  Associate Defendant Groves, Lieutenant Harter, and Captain Cota.  (Doc. 76-1, Ex.

6  A pp. 4-5). On June 16, 2023, in support of their opposition to Plaintiffs' motion to compel,

7  Defendants' filed a privilege log that identified these same three CDCR staff and described in

8  more detail the nature of the confidential documents they authored.  (Doc. 63-2, Ex. D).  And on

9  June 26, 2023, Plaintiffs received the 500 pages of confidential documents subject to the parties'

10  protective order – including the documents identified in the privilege log by these three authors

11  (and numerous other authors).  Based on a review of the documents these three witnesses

12  authored, it is clear they would be the more suitable witnesses to depose than Defendant Ndoh

13  with respect to details of the Incident.

14         Similarly, Plaintiffs had sufficient notice in advance of the close of nonexpert discovery

15  from which they reasonably should have perceived that the acting warden on the date of the

16  Incident (Vera) would be better suited to attest to details of the Incident than Defendant Ndoh.  In

17  particular: (1) Defendants' initial disclosures identified Vera as the acting warden on the date of

18  the Incident; and (2) the confidential documents produced to Plaintiffs on June 26, 2023,

19  identified Vera as the acting warden. Production of the confidential documents prompted

20  Plaintiffs to seek depositions of two cell block officers who were percipient witnesses to the

21  Incident (Doc. 78-1 ¶ 13), but for some reason that is not clear to the Court, Plaintiffs neglected to

22  seek to depose Acting Defendant Vera.

23         In short – Plaintiffs' diligence in undertaking discovery has been lacking in general and

24  lacking with respect to anticipating a defendant at deposition would not have perfect recollection

25  of material facts of an event that occurred more than four and one half years prior.  However, as

26  acknowledged above, the Court recognizes that Plaintiffs' recent challenges in attempting to seek

27  supplemental discovery within the time provided resulted in part from Defendants' unwillingness

28  or inability to expeditiously agree upon a protective order that facilitated production of important

1    documents near the end of fact discovery.

2          In considering the appropriate boundaries of permissible discovery under Rule 26, the

3    Court balances "whether the burden or expense of the proposed discovery outweighs its likely

4    benefit," and weighs whether a party's desired discovery is "proportional to the needs of the

5    case." Fed. R. Civ. P. 26(b)(1). The Court may limit discovery if a party's request falls outside

6    the parameters set forth above, or where, for instance, the party already had ample opportunity to

7    obtain the information sought. Fed. R. Civ. P. 26(b)(2)(C).

8                            *       *       *       *       *

9          With these principles and the background of the case in mind, the Court concludes that a

10   *limited* extension of nonexpert discovery is warranted pertaining to the actions of Defendant

11   Ndoh and her staff in response to the Incident.

12         Plaintiff separately argues that case management dates should be extended to facilitate

13   discovery of Defendant Diaz's and CDCR's knowledge of Defendant Ndoh's medical condition

14   at the time of her promotion to and maintenance at the position of warden, as such knowledge

15   could evince deliberate indifference. (Doc. 76-1 ¶ 2(B). The Court disagrees for a number of

16   reasons. First, since filing their motion, Plaintiffs have had the opportunity to depose Defendant

17   Diaz. (*See* Doc. 76-1 ¶ 20). Thus, the Court presumes Plaintiffs already have been able to

18   explore whether and the extent to which Defendant Diaz had personal involvement in the

19   promotion of Defendant Ndoh to the position of warden, and if so, whether he was aware at that

20   time that Defendant Ndoh suffered from a condition affecting her memory. *See Farmer v.*

21   *Brennan,* 511 U.S. 825, 847 (1994) (a prison official is liable only when the official "knows that

22   inmates face a substantial risk of serious harm and disregards that risk by failing to take

23   reasonable measures to abate it"). If Plaintiffs were unsuccessful exploring these issues during

24   Defendant Diaz's deposition, Plaintiffs could have advised the Court of this fact in a motion reply

25   brief.

26         Moreover, Plaintiffs make no argument in support of their motion that the constitutional

27   harms they suffered were caused by any memory deficiency on the part of Defendant Ndoh. *E.g.*,

28   *Smith v. Allbaugh*, 987 F.3d 905, 912 (10th Cir. 2021) (insufficient connection between inmate's

1   alleged harm and prison's hiring of staff with past drug use and related discipline).  To properly

2   allege deliberate indifference, plaintiff must show a direct connection between the background of

3   the alleged tortfeasor and the specific violation alleged such that "the hired officer was highly

4   likely to inflict the particular type of injury suffered." *Rivera v. Bonner*, 952 F.3d 560, 565 (5th

5   Cir. 2017) (quotation and citation omitted). Thus, even if Defendant Diaz was aware of Defendant

6   Ndoh's condition and was involved in her placement as warden, without more, the connection

7   between Defendant Ndoh's memory condition and the injury to Plaintiffs is not strong enough to

8   show that Defendant Diaz was deliberately indifferent.

9   **IV.    Conclusion and Order**

10          Accordingly, IT IS HEREBY ORDERED, discovery shall be reopened for a period of 45

11   days from the date of filing of this Order for the limited purpose of allowing Plaintiffs to

12   schedule, notice or subpoena, and take, the depositions of Chief Deputy Defendant Paul Vera, as

13   well as the Person Most Knowledgeable regarding the actions of Defendant Ndoh and her staff in

14   response to the Incident (to the extent that person is not Vera). (Doc. 76-1 ¶ 19).[3]  Defendants'

15   counsel is directed to cooperate with Plaintiffs in making those individuals available for

16   deposition within that time period. Plaintiffs' counsel is, however, cautioned that there will be no

17   further extensions of time, and counsel is therefore advised to promptly begin the process of

18   setting those depositions.

19   IT IS SO ORDERED.

20      Dated:   **September 18, 2023**   _____

21                                    UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28
       _____
          [3] Plaintiffs offer no more specificity as to what discovery they seek to undertake aside from
       generally referring to the need to discover "important facts related to Ms. Ndoh's actions" on the date of
       the Incident.  (Doc. 76-1 ¶ 2(A)).